Michael JACKSON et al., Appellants,

v.

C. R. DORRIER et al., Appellees.

No. 19351.

United States Court of Appeals,
Sixth Circuit.

April 6, 1970.

Larry Helm Spalding, Nashville, Tenn., for appellants, Barrett, Creswell & Mitchell, George E. Barrett, Nashville, Tenn., Charles Morgan, Jr., Reber F. Boult, Jr., Atlanta, Ga., on the brief, Melvin L. Wulf, Eleanor Holmes Norton, New York City, of counsel.

Robert E. Kendrick, Deputy Metropolitan Atty., Nashville, Tenn., for appellees.

Robert J. Conlon, on brief of parents concerned for all school children for amicus curiae.

Before PHILLIPS, Chief Judge, BROOKS, Circuit Judge,* and MACHROWICZ, District Judge.**

PER CURIAM.

This case involves the timely subject of longhair worn by teenage male high school students.

The Metropolitan Board of Education of Nashville and Davidson County, Tennessee, adopted the following regulation in 1961:

"Pupils shall observe modesty, appropriateness, and neatness in clothing and personal appearance. A student is not appropriately dressed if he is a disturbing influence in class or school because of his mode of dress. The principal may suspend a student who does not meet this requirement."

Under this regulation the students at Donelson High School were told, as to

* Honorable Henry L. Brooks, Chief Judge, U. S. District Court for the Western District of Kentucky, sat on this case by designation on October 1, 1969. On December 12, 1969, his oath was administered as a judge of this Court.

** Honorable Thaddeus M. Machrowicz, Judge, U. S. District Court for the Eastern District of Michigan, sitting by designation. This case was assigned to Judge Machrowicz for preparation of the opinion. The opinion had not been completed at the time of the death of Judge Machrowicz on February 17, 1970. Prior to his death Judge Machrowicz and the other members of the panel had agreed upon the decision announced in this opinion.

hair on male students, that hair in the front may not come below the eyebrows, ears must show clear of hair and hair in the back is to be tapered and not be long enough to turn up.

Two male students, Michael Jackson and Barry Steven Barnes, who were members of a combo band known as "The Purple Haze," permitted their hair to grow longer than prescribed by school officials. After conferences with the students and their parents the students were suspended by the principal and sent home for violation of the regulation. After additional conferences a hearing was conducted before the Board of Education. The Board sustained the action of the principal.

This suit was filed by the two students and by their parents, suing as individuals and as next friends of their minor sons. Jurisdiction is asserted under 28 U.S.C. § 1343.

District Judge Frank Gray, Jr., conducted an extensive hearing and denied injunctive relief. He made an affirmative finding of fact to the effect that the evidence unquestionably establishes that the regulation has a real and reasonable connection with the successful operation of the educational system, in that it is reasonably calculated to maintain school discipline. He held that the evidence failed to show that the students have been deprived of any constitutional rights.

We affirm.

The complaint charges that the student plaintiffs have been deprived of certain rights guaranteed by the Constitution of the United States; that the defendant school officials, having the authority and duty to promulgate plans, rules and regulations for the administration and operation of the public school system, wrongfully refused to enroll these two students at Donelson High School for the school year beginning September 1968 on the ground that their hair was too long, that they wore mustaches, and in the case of Barnes, a beard; and that the two students were informed that their appearance constituted "improper grooming" which amounted to "distracting attire." The complaint sought a declaration that the above quoted regulation is invalid. It prayed that defendants be compelled to readmit these two students to Donelson High School and that defendants be enjoined from conditioning attendance at school on the length of hair or the presence of a beard or mustache.

At the evidentiary hearing before the District Court it was established that the standards of neatness in personal appearance and dress set forth in the above-quoted regulation are communicated to students at Donelson High School each year by announcements over the school intercom and in assembly programs. They are discussed in home rooms and are the subject of conferences with individual students. Specific information is given to members of the student body as to the maximum length permitted for the hair of male students.

Jackson and Barnes began to run afoul of these rules during the 1967–68 school year. During that year they were members of "The Purple Haze" combo band and began to let their hair grow longer.

Barnes was absent from school 38 days and Jackson was absent 46 days and tardy 24 days during that school year. The principal wrote Jackson's parents in October 1967 concerning his absences and tardiness. He pointed out that on more than one occasion Jackson had been absent from school during the day and played with his combo band that night and that he had been averaging being away from school one day out of every four in addition to his tardiness. Proof was introduced that the grades of both boys dropped during the 1967–68 school year. Jackson ended the year with grades of D, C, F, D and B (Physical Education) and Barnes with grades of D, F, D, D and C (Art) and B (summer session 1967).

During the 1967–68 school year the principal informed Jackson and Barnes that their hair styles were not in con-

formity with the regulation. There was evidence that during the 1967–68 terms the long hair of these two students became a distracting influence in the school. Even though the two students failed to conform to the rules, after warning, no disciplinary action was taken against them during the 1967–68 school year and they were permitted to complete that academic year without changing their hair styles. The principal told Barnes that he would have to get his hair cut before returning to school in the fall. During the summer of 1968 both boys let their hair grow longer. When the new school term opened in September 1968 Jackson presented himself with hair over the lapel of his coat in the back and down to the tips of his earlobes on the sides, and with sideburns and a mustache. Barnes appeared with hair down to his shoulders and with a mustache, a beard and long sideburns.

After a conference the principal suspended the two students for violation of the regulation. He followed the suspension procedure prescribed by the Board of Education, filling out written suspension forms in quadruplicate. One copy was sent to the parents of the students, one copy to the director of school personnel, and one copy to the area superintendent and the fourth copy was kept in the school's files. The principal held conferences with parents of the two students. The case then was referred to the Pupil Personnel Department of the Metropolitan school system. The Director of Pupil Personnel Services held a conference with the parents and advised them of their right to appeal from the action of the principal to the Metropolitan Board of Education.

The parents appealed to the Board of Education. A hearing was held before the Board on September 19, 1968. At this hearing the parents made full statements of their position and also questioned the principal of Donelson High School in the presence of the Board.

The Board upheld the action of the principal in suspending the students for violation of its regulation.

■ The District Court made a finding of fact to the effect that the regulation here attacked, as interpreted and enforced by the principal of Donelson High School, has a real and reasonable connection with the successful operation of the educational system and tends to help maintain school discipline. He further found that the evidence failed to show that the students have been deprived of any constitutional rights. Findings of fact of the District Court will not be disturbed on appeal unless they are "clearly erroneous." Rule 52(a), Fed.R.Civ.P. We find substantial evidence in the record to support the findings of the District Judge.

■ There is evidence to support the conclusion that the wearing of excessively long hair by male students at Donelson High School disrupted classroom atmosphere and decorum, caused disturbances and distractions among other students and interfered with the educational process. Members of faculty of Donelson High School testified that the wearing of long hair by Jackson and Barnes was an obstructing and distracting influence to a wholesome academic environment. A teacher of history and social studies stated that two boys with long hair were a distracting influence in her class; that they were "constantly combing, flipping, looking in mirrors and rearranging their hair," attracting the attention of other students and interfering with classroom teaching; and that the train of thought of both the students and teachers was interrupted. An English teacher testified that she often asked a boy to put away his comb and refrain from combing his hair in class. She described long hair on male students as a disturbing and distracting influence on educational processes in her classes and other school activities at Donelson High School. A teacher of industrial arts testified that girls with long hair were required to wear hair

nets as a safety precaution and that long hair on boys was a safety hazard in shop work. One teacher said that other students pay more attention to a boy with long hair than to what the teacher is trying to teach. Another teacher testified that when her class was attended by the boys with long hair hardly a day would go by that she would not have to interrupt her teaching and say: "Put your combs away. This is not a beauty parlor. This is a school classroom."

Other teachers testified to like effect before the District Judge, along with several Donelson High School students, including the vice president of the student body and the president of the senior class. The vice president of the student body described how the long hair of Jackson and Barnes, and their disobedience of the school regulation, set off a chain reaction of conversation, speculation and excitement among other students at the beginning of the 1968–69 school term. He testified concerning a threat by some of the students to cut off the long hair of Jackson and Barnes.

The principal of Donelson High School testified that he had complaints from teachers that Jackson and Barnes, because of their long hair, were a disturbing and distracting influence in their classes.

The record establishes that the deliberate flouting by Jackson and Barnes of this well publicized school regulation created problems of school discipline.

■ It is contended that enforcement of the regulation deprived the two students of freedom of speech and expression in violation of the First Amendment. Neither of the students testified that his hair style was intended as an expression of any idea or point of view. We agree with the finding of the District Court that this record does not disclose that the conduct of Jackson and Barnes and the length of their hair were designed as an expression within the concept of free speech. Therefore Tinker v. Des Moines School Independent Community District, 393 U.S. 503, 89 S.

Ct. 733, 21 L.Ed.2d 731 (1969), has no application. The Supreme Court in that case said:

"The problem posed by the present case. does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment. C.f. Ferrell v. Dallas Independent School District, 5 Cir., 392 F.2d 697 * * *." 393 U.S. 507–508, 89 S.Ct. 737.

■■ The record supports the finding of the District Judge that Jackson and Barnes pursued their course of personal grooming for the purpose of enhancing the popularity of the musical group in which they performed. We agree with Judge Gray that "the growing of hair for purely commercial purposes is not protected by the First Amendment's guarantee of freedom of speech."

■ It is further contended that the action of school officials violated the due process clause of the Fourteenth Amendment. The evidence shows that the two students were afforded ample opportunity to be heard and that the procedural and substantive requirements of due process were met by conferences conducted by the school principal and by the hearing before the Board of Education. We agree with the District Judge that:

"To hold that the relationship between parents, pupils and school officials must be conducted in an adversary atmosphere and accordingly the procedural rules to which we are accustomed in a court of law would hardly best serve the interests of any of those involved."

■ We also agree with the District Court that the regulation enforced in this case is not void for vagueness and overbreadth, but to the contrary, as applied to these two students, was quite specific. The record shows that the principal of Donelson High School interpreted and administered the regulation in such a way as clearly to inform all students, including the two involved in

this case, as to what was required of them with regard to personal grooming. There can be no doubt that Jackson and Barnes had adequate notice of what was expected of them and deliberately chose not to comply with the regulation.

■ Appellants further contend that they have been deprived of the equal protection of the law in violation of the Fourteenth Amendment. As held by the District Court:

"[T]he record is absolutely devoid of any proof that the regulation's application in this case was the result of selective enforcement of the regulation against these students, so as to sustain the allegation that they have been denied the equal protection of the law."

As previously stated, substantial evidence supports the finding of the District Judge that the regulation has a real and reasonable connection with the successful operation of the educational system and with the maintenance of school discipline.

■ It is further contended that the constitutional right of privacy of the students and their parents has been impaired in violation of the First, Third, Fourth, Fifth, Ninth and Fourteenth Amendments. We find the contention to be without merit under the record in this case. In our opinion Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510, has no application here.

The facts in this case are strikingly similar to those involved in Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir.), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125. The holding in *Ferrell* is significant because of the Supreme Court's reference to it in the above quotation from *Tinker*, 393 U.S. 508, 89 S.Ct. 733, 21 L.Ed.2d 731.

To like effect see Davis v. Firment, 408 F.2d 1085 (5th Cir.), affirming, 269 F.Supp. 524 (D.C.); Crews v. Cloncs, 303 F.Supp. 1370 (S.D.Ind.); Glangreco v. Center School District (W.D.Mo.) Sept. 25, 1969.

We have also considered decisions holding to the contrary, including Breen v. Kahl, 419 F.2d 1034 (7th Cir.), affirming, 296 F.Supp. 702 (D.C.); Richards v. Thurston, 304 F.Supp. 449 (D.Mass.); Miller v. Gillis (N.D.Ill.) Sept. 26, 1969; and Olff v. East Side Union High School District, 305 F.Supp. 557 (N.D.Cal.).

■ Having found no violation of constitutional rights, we are not prepared to hold that the regulation here in question and the interpretation and application placed upon it are beyond the power of school officials and the Board of Education, as applied to public elementary and high schools, provided there is adequate compliance with due process standards. The students here involved were accorded an adequate hearing before school authorities and the Board of Education and a thorough evidentiary hearing before the District Judge.

In Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228, the Supreme Court said:

"Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. * * * By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values."

In Tinker v. Des Moines Independent Community School District, *supra*, the Court said:

"[T]he Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." 393 U.S. at 507, 89 S.Ct. at 737.

■ In the absence of infringement of constitutional rights, the responsibili-

ty for maintaining proper standards of decorum and discipline and a wholesome academic environment at Donelson High School is not vested in the federal courts, but in the principal and faculty of the school and the Metropolitan Board of Education of Nashville and Davidson County, Tennessee.

We follow Ferrell v. Dallas Independent School District, *supra*, in holding that the District Court committed no error in dismissing the present case.

Affirmed.